

RECEIVED
WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA

DATE  07  /  07  /  05
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


KEITH WARREN BLAYNE,                    CIVIL ACTION
          Plaintiff                     SECTION "P"
                                        NO. CV04-0327-A
VERSUS

J. FLATTERY,                            JUDGE DEE D. DRELL
          Defendant                     MAGISTRATE JUDGE JAMES D. KIRK



SUPPLEMENTAL REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

     Before this court is a complaint filed pursuant to Bivens v.

Six Unknown Named Agents of the Federal Bureau of Narcotics, 403

U.S. 388, 91 S.Ct. 1999 (1971),[1] on January 28, 2004, by pro se

plaintiff Keith Warren Blayne ("Blayne"). The sole named defendant

is Dr. J. Flattery ("Flattery"), a medical doctor and the clinic

director employed at the Federal Prison Camp in Pollock, Louisiana

---

     [1] Bivens defendants are federal officials brought into
federal court for violating the Federal Constitution. Bivens-
type actions may be brought only against federal agents and not
federal agencies. F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114
S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); Whitley v. Hunt, 158
F.3d 882 885 (5th Cir. 1998). Under Bivens, a plaintiff may
recover damages for any injuries suffered as a result of federal
agents' violations of his constitutional rights. Channer v.
Hall, 112 F.3d 214, 216 (5th Cir. 1997). Bivens-type actions may
be brought only against federal agents and not federal agencies.
Martinez v. City of Los Angeles, 141 F.3d 1373, 1383 (9th Cir.
1998). Also, F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114 S.Ct.
996, 1006, 127 L.Ed.2d 308 (1994); Whitley v. Hunt, 158 F.3d 882
885 (5th Cir. 1998).

("FPC-Pollock"). Blayne contends that, while he was incarcerated in the FPC-Pollock from May 2002 through January 2004, Dr. Flattery denied Blayne appropriate medical care for a tumor on his ear. For relief, Blayne asks for a jury trial, monetary damages, and a permanent injunction.

Defendants filed a motion to dismiss the action (Doc. Items 12, 15), to which Blayne responded (Doc. Item 14). Since defendants' motion to dismiss is accompanied by medical records, an affidavit, and other documentary evidence outside the scope of the pleadings, it will be considered as a motion for summary judgment pursuant to Fed.R.Civ.P. rule 56, in accordance with Rule 12(b).

<u>Law and Analysis</u>

Service of Process

Defendant contends Flattery's complaint should be dismissed because the United States Attorney and the Attorney General were not properly served pursuant to Fed.R.Civ.P. rule 4(i). Since the fault apparently lies with the Clerk of Court's office for not effecting service as ordered by the court (Doc. Item 7), it would be inappropriate for the court to penalize Blayne as suggested by defendant. Where there is no prejudice to the defendant, the plaintiff should not be penalized for the failure to properly effect service of process where such failure is through no fault of the plaintiff. <u>Lee v. Henderson</u>, 75 F.Supp.2d 591, 595 (E.D.Tex. 1999), citing <u>Rochon v. Dawson</u>, 828 F.2d 1107, 1109 (5th Cir. 1987).

2

See also, <u>Dumaguin v. Sec'y of Health and Human Serv.</u>, 28 F.3d 1218 (D.C. Cir. 1994), cert. den., 516 U.S. 827, 116 S.Ct. 94, 133 L.Ed.2d 50 (1995); <u>Puett v. Blanford</u>, 912 F.2d 270 (9th Cir. 1990); <u>Tajedinni v. Gluch</u>, 942 F.Supp. 772 (D.Conn. 1996); <u>Hurlburt v. Zaunbrecher</u>, 169 F.R.D. 258, 259 (N.D.N.Y. 1996); <u>Lee v. Brotherhood of Maintenance of Way Emp'ees</u>, 139 F.R.D. 376 (D.Minn. 1991). It is apparent that the U.S. Attorney, at least, received copy of the complaint, as required by Rule 4, and has been able to respond to it.

Since no prejudice is shown by the Respondent, this ground for relief is meritless.

<u>Sovereign Immunity</u>

Dr. Flattery contends he is entitled to sovereign immunity from Blayne's claims against him in his official capacity on the basis that claims against BOP employees are actually claims against the United States. Since Blayne specifically states in his complaint that he is suing Dr. Flattery in his *personal* capacity - not his official capacity, this argument is meritless.

<u>Qualified Immunity and Failure to State a Claim</u>

Dr. Flattery also argues he is entitled to qualified immunity because Blayne failed to state a claim for violation of his constitutional rights by Dr. Flattery.

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the

3

official violated a constitutional right that was clearly established at the time of the incident. <u>Woods v. Smith</u>, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties:

> "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law."

<u>Bazan v. Hidalgo County</u>, 246 F.3d 481, 489 (5th Cir. 2001), citing <u>Salas v. Carpenter</u>, 980 F.2d 299, 306 (5th Cir. 1992).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. <u>Hare v. City of Corinth</u>, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has alleged violation of a clearly established constitutional right. This analysis is made under the currently applicable constitutional standards. <u>Hare</u>, 135 F.3d at 325. A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent. Officials must observe general, well-

4

developed legal principles. <u>Doe v. Taylor Independent School Dist.</u>, 15 F.3d 443, 445 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70 (1994).

The second prong of the qualified immunity test if better understood as two separate inquired: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law. <u>Hare</u>, 135 F.3d at 325-36. Objective reasonableness is a question of law for the court. The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. <u>Hare</u>, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. <u>Douthit v. Jones</u>, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official

either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. Douthit, 619 F.2d at 533.

1.

Blayne alleges Dr. Flattery delayed Blayne's surgery to remove the keloid scar from his ear lobe, which resulted in loss of part of his ear. In order to show that his medical care violated the Eighth Amendment, an inmate must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997), citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291. Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Norton v.

6

<u>Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997). However, a prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. <u>Walker v. Butler</u>, 967 F.2d 176, 178 (5th Cir. 1992); <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987). Since the law as to the Eighth Amendment right to medical care was well-settled in 2002 through 2004, Blayne has alleged the violation of a clearly established constitutional right. Therefore, the court must now consider whether Blayne has shown Dr. Flattery violated his constitutional rights.

2.

In the case at bar, Blayne contends his keloid scar grew continuously. Blayne alleges that Dr. Flattery delayed his surgery so long that, by the time the scar was removed, he lost a large portion of his ear with it.

Dr. Flattery shows in his affidavit (Doc. Item 12, Ex. A) and Blayne's medical records that Blayne pierced his ear in about 1990, prior to his incarceration in 1996, and that a keloid scar formed over the hole. Before Blayne arrived at FPC-Pollock in 2002, Blayne had removed the scar once himself with a pair of nail clippers, and three surgeries had been performed to remove it, but it had always grown back. When the scar was removed for the fourth time on September 9, 1997, it was 5 cm.; his earlobe was subsequently treated with radiation and triamcinolone (steroid)

7

injections.

In April and July 2000, while at another prison facility, Blayne requested surgery again since his keloid (3 cm. X 4 cm.) was growing again and he was unable to sleep. Those requests were denied at the other prison on April 17, 2000, and July 20, 2000, because they were for an unauthorized procedure due to the non-pathological nature of his problem.

Dr. Flattery's affidavit further shows that, after Blayne arrived at FPC-Pollock in March 2002, he again requested surgery to remove the keloid scar from his ear lobe. An outside consultation for Blayne was requested by the prison on May 28, 2002; on July 10, 2002, Blayne was examined by an outside dermatologist who recommended excision of the "large keloid," followed by steroid injections and radiation in an attempt to prevent it from regrowing. A BOP physician other than Dr. Flattery examined Blayne on July 18, 2002, noted Blayne's complaints of pain and itching but found no inflammation, and explained to Blayne that the further surgery would be cosmetic only and it was against BOP policy to provide cosmetic surgery. On July 25, the keloid was measured at 2 cm.; on August 13, 2002, Blayne received a steroid injection in the keloid scar. Despite the injection, Blayne's scar grew to 4 cm. by September 17, 2002, and he was given a steroid cream to apply to it. According to Dr. Flattery's affidavit, Blayne's condition was reviewed again by the Utilization Review Committee,

which Dr. Flattery chaired, and Blayne's request for surgery was denied in September and November 2002.

The scar was re-injected with steroids on October 17, 2002. By November 14, 2002, Blayne was experiencing discomfort from the keloid scar, was prescribed topical medications, and another outside surgical consultation was set up. However, surgical removal of the keloid, which was denied by Dr. Frank Elwin on November 20, 2002, because it was a cosmetic procedure. The scar continued to grow, became tender, and was treated with medications in December 2002 through April 2003. In February 2003, Dr. Flattery again examined Blayne's scar and placed him on the schedule to see the Health Services Administrator. In June 2003 another outside dermatology consultation was recommended and planned.

In October 2003, Dr. Flattery noted Blayne's keloid was 5.5 cm. X 4 cm. and painful at the point of attachment. A November 2003 examination showed no sign of infection. Blayne's outside dermatology consultation was in February 2004; Dr. Flattery noted that surgery was recommended and that he would discuss it with the Health Services Administrator.

In April 2004, Blayne had an outside surgical consultation with a plastic surgeon; the scar was causing Blayne pain and discomfort, and surgical excision (followed by intralesional steroid injection) was approved by the BOP Central Office medical

staff. Blayne's 8 cm. keloid scar was surgically removed on April 22, 2004. In July 2004, Blayne began post-surgery steroid injections in his ear lobe. Dr. Flattery stated in his affidavit that, since post-surgery radiation treatment had been previously unsuccessful, he decided to try steroid injections instead. In January 2005, Blayne's keloid scar was noted to be re-growing.

It is apparent that Dr. Flattery was not solely responsible for authorizing, or failing to authorize, Blayne's surgery; in fact, Dr. Flattery referred Blayne for outside consultations and attempted to obtain surgery approval more than once. It is equally clear that Blayne was not denied medical care by Dr. Flattery. The previous attempts to remove Blayne's keloid scar were unsuccessful, and nothing indicated another surgery at FPC-Pollock would have a different outcome. Instead, Blayne's scar was treated with steroid injections until it re-grew to the point that surgical removal was again necessary.

Finally, Blayne has not shown that, had his surgery not been so long delayed, he would not have lost part of his ear lobe. Blayne had a large keloid scar on his earlobe when he arrived at FPC-Pollock which had already been surgically removed four times; it is impossible to tell from the medical records how much ear lobe Blayne had left when he arrived at FPC-Pollock in 2002.

Blayne points to the case of Brock v. Wright, 315 F.3d 158 (2d Cir. 2002), which involved denial of medical care for an inmate's

chronically painful keloid scar on his cheek, surgical removal of which was deemed cosmetic by the prison officials. The Second Circuit found the chronic pain caused by the scar, whenever Brock moved his face, fell within the Eighth Amendment's prohibition against the denial of medical care for conditions which cause or perpetuates pain. However, that case is distinguishable from the case at bar on several grounds, foremost being that Blayne had four prior unsuccessful surgical removals of his scar as well as alternative medical treatment, while Brock received no treatment whatsoever. Dr. Flattery shows in his affidavit that he monitored and treated Blayne's complaints of pain and discomfort and watched for signs of infection. Blayne received treatment for his scar at FPC-Pollock prior to the April 2004 surgery; he just did not receive the surgery he demanded. Dr. Flattery states in his affidavit that Blayne expressed his disagreement with Dr. Flattery's recommended treatments several times. Although the alternative treatments of Blayne's scar at FPC-Pollock were unsuccessful and surgery was once again required, Blayne's claims as to denial of medical care and delay in providing the surgery appear to be nothing more than a disagreement with the medical staff at FPC-Pollock as to the type of medical treatment he should receive. Those claims do not satisfy the Eighth Amendment requirement of deliberate indifference to Blayne's serious medical needs.

Blayne has not shown that Dr. Flattery was deliberately indifferent to his serious medical needs and violated his Blayne's constitutional right to medical care. Therefore, Dr. Flattery is entitled to qualified immunity from Blayne's action against him.[2] Since there are no genuine issues of material fact which would preclude a summary judgment, Dr. Flattery's motion for summary judgment should be granted and Blayne's action should be dismissed with prejudice.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Dr. Flattery's motion for summary judgment be GRANTED and that Blayne's action against Dr. Flattery be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

---

[2] Entitlement to qualified immunity does not, as defendant suggests in brief, deprive this court of subject matter jurisdiction.

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 6th day of July, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE